UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                :

  XAVIERA ROMERO,                   :

                                :

          Plaintiff,          :   Civil Action No. 1:19-cv-07282 (KAM)(ST)

                                :

        -against-           :

                                :

  ST. VINCENT'S SERVICES, INC., d/b/a  :
  HEARTSHARE ST. VINCENT'S SERVICES,  :

                                :

        Defendant.         :

                                :
-------------------------------------------------------x


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT


 

Stewart Lee Karlin
Law Group, P.C.
*Attorneys for Plaintiff*
111 John Street, 22nd Floor
New York, NY 10038
(212) 792-9670
Fax: (844) 636-1021
dan@stewartkarlin.com
slk@stewartkarlin.com

*Counsel*:
Daniel E. Dugan, Esq.
Stewart Lee Karlin, Esq.

## TABLE OF CONTENTS

*Item*                                                                    *Page*

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-vi

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-6

    A.    Plaintiff's Hire . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Plaintiff's Employment with HSVS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

    C.    Plaintiff's Termination of Employment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-22

    POINT I: APPLICABLE SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . 7-8

    POINT II: PLAINTIFF'S DISCRIMINATION CLAIM UNDER TITLE VII . . . . . . . . 8-20

        A.    Standard to Evaluate Pregnancy Discrimination Claims . . . . . . . . . . . . 8-9

        B.    Plaintiff's *Prima Facie* Case of Discrimination . . . . . . . . . . . . . . . . . . . 9-15

            1.    Plaintiff Was a Member of a Protected Class . . . . . . . . . . . . . . 9-11

            2.    There Exists an Inference of Discrimination . . . . . . . . . . . . . . 11-15

        C.    Defendant's Purported Legitimate Non-Discriminatory
            Reasons for Its Actions are Pretextual . . . . . . . . . . . . . . . . . . . . . . . . . 15-20

1.   Alleged Prior Complaints . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

2.   Meisel's Complaint Regarding Plaintiff . . . . . . . . . . . . . . . . . 17-19

3.   Plaintiff's Alleged Insubordination . . . . . . . . . . . . . . . . . . . . .  19

4.   Additional Evidence of Pretext . . . . . . . . . . . . . . . . . . . . . . . 19-20

POINT III: PLAINTIFF'S NYSHRL AND NYCHRL CLAIMS . . . . . . . . . . . . . . . . 21-22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

# TABLE OF AUTHORITIES

*Item*                                                                  *Page*

**Laws and Statutes**

New York City Admin Code Sec. 8-107(1)(a)(2)-(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

New York City Human Rights Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 21, 22

New York Exec. Law Sec. 296(1)(a) 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

New York State Human Rights Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 21, 22

Title VII of the Civil Rights Act of 1964 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 20, 21

**Cases**

*Albunio v. City of New York,*
16 N.Y.3d 472, 477, 922 N.Y.S2d 244 [2011] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*American Ca. Co. Of Reading, PA. v. Nordic Leasing, Inc.,*
42 F.3d 725, 728 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bainlardi v. SBC Warbug, Inc.,*
1998 US Dist. LEXIS 13491 (SDNY September 1, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bennet v. Health Mgt. Sys., Inc.,*
92 A.D.3d 29 [1st Dep't 2011] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Burdine,*
450 U.S. at 253, 101 S. Ct. at 1094 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Clark County School Dist. v. Breeden,*
532 US 268, 273-74 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cronin v. Aetna Life Ins. Co.,*
46 F.3d 196, 203 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Eastman Mach. Co. V. United States,*
841 F.2d 469, 473 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Feingold v. New York,*
366 F.3d 138, 156 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Fernandez v. Woodhull Med. And Mental Health Ctr.,*
No. 14-cv-CV-4191, 2017 WL 3432037, at *8(EDNY August 8, 2017) . . . . . . . . . . . . . . . . . .  12

*Gallo v. Prudential Residential Services, Ltd. Partnership,*
22 F.3d at 1225 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Gordon v. NYC Bd. of Ed.,*
232 F.3d 111, 116 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Graziano v. First Choice Medical, PLLC,*
2019 WL 4393668, *5 (EDNY 2019 internal citations omitted) . . . . . . . . . . . . . . . . . . . . . . . .  9

*Ingenito v. Riri USA, Inc.,*
2013 WL 752201, 10 (E.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Kwan v. Andalex Grp.  LLC,*
737 F.3d 834, 835 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Labarbera v. NYU Winthrop Hospital,*
527 F.Supp.3d 275 (EDNY 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Lambert v. McCann Erickson,*
543 F.Supp2d 265, 277-278 (SDNY 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 13

*Lovejoy Wilson v. NOCO Motor Fuel, Inc.,*
263 F.3d 208, 212 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McDonnell Douglas Corp. v. Green,*
411 US 792, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 8, 11

*Mihalik v. Credit Agricole Cheuvreux North America, Inc.,*
715 F.3d 102, 113 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Montana v. First Fed. Sav. & Loan Assn,*
869 F.2d 100, 103 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Papelino v. Albany Coll. of Pharmacy of Union Univ.,*
633 F.3d 81, 92 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Perkins v. Memorial Sloan-Kettering Cancer Ctr.,*
2005 US Dist. LEXIS 22541 (SDNY October 5, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Reeves v. Sanderson Plumbing Prods.,*
530 US 133, 148 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Rodal v. Anesthesia Group of Onondaga, PC,*
369 F.3d 113 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Singh v. Knuckles, Komosinski & Manfro, LLP,*
2020 WL 6712383, *11 (SDNY 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Suburban Propane v. Proctor Gas, Inc.,*
953 F.2d 780, 788 (2d Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Trans Orient Marine Corp. v. Star Trading & Marine, Inc.,*
925 F.2d 566, 572 (2d Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Treglia v. Town of Manlius,*
313 F.3d 713, 721 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Tyler v. Bethlehem Steel Corp.,*
958 F.2d 1176, 1187 (2d Cir.), cert. denied US 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992) . . . . 11

*United States v. Diebold Inc.,*
369 US 654 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Vale v. Great Neck Water Pollution Control District,*
80 F. Supp. 3D 426 437 (EDNY 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Weg v. Macchiarola,*
995 F.2d 15, 18 (2d Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Williams v. New York City Housing Authority,*
872 NYS 2d 27 (1st Dep't 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## PRELIMINARY STATEMENT

Plaintiff Xaviera Romero ("Romero") submits this memorandum of law in opposition to Defendant St. Vincent's Services, Inc.'s d/b/a Heartshare St. Vincent's Services' ("HSVS") Motion for Summary Judgment.  Plaintiff was employed by HSVS as the Director of Mental Health Clinics for over two years until her discriminatory termination on September 26, 2018, less than two weeks after undergoing fertility treatments and learning she was pregnant. As a result, Plaintiff commenced this action, alleging that HSVS violated Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL") and the ("NYCHRL"), in terminating her employment because of her gender (her pregnancy), perceived pregnancy and pregnancy-related medical conditions.

Plaintiff's claims, analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, satisfy the showing of a *prima facie* case of discrimination.  HSVS does not dispute that Romero was a member of a protected class due to her pregnancy and that her termination on September 26, 2018, was an adverse employment action.  Romero placed her direct supervisor on notice of her fertility treatments by handing him a doctor's note from her fertility treatment specialist on September 17, 2018.  Next, Plaintiff was qualified for her position.  Lastly, the totality of the evidence shows that a factfinder could reasonably conclude that her termination occurred under circumstances giving rise to an inference of pregnancy discrimination.

Following the showing of a *prima facie* case of discrimination, the burden shifts to Defendant to set forth a legitimate, non-discriminatory reason for Plaintiff's termination.  The reasons set forth by HSVS for Plaintiff's termination, that (1) Alexandre became aware of a complaint from an employee regarding leaving work early for Yom Kippur, (2) the complaining employee said other employees were unhappy with their treatment, and (3) insubordination are

directly refuted by the evidence. HSVS's reasons for Plaintiff's termination are pretextual, and her termination was motivated by her pregnancy.

Defendant's Motion for Summary Judgment asks this Court to impermissibly weigh the evidence before it, as presented in the parties' Rule 56.1 statements. Accordingly, Defendant has failed to meet its burden, that as a matter of law, it is entitled to a summary judgment.  Thus, it is respectfully requested that Defendant's motion for summary judgment be denied in its entirety.

## STATEMENT OF FACTS

**A.      Plaintiff's Hire**

Plaintiff was hired by Defendant HSVS on September 6, 2016, as Director-Mental Health Clinics within HSVS's Integrated Health Services Division.  56.1 ¶¶4, 7-8.  At the time of her hire, Plaintiff's direct supervisor was Jennifer Outlaw ("Outlaw"), the Senior Vice President of Integrated Health Services.  56.1 ¶¶9-10.  Outlaw was supervised by Dawn Saffayeh, Executive Director of HSVS.  56.1 ¶¶5, 11.

**B.      Plaintiff's Employment with HSVS**

In her position, Plaintiff oversaw the day-to-day operations of the Mental Health Clinics operated by HSVS.  At the time of her hire, HSVS operated three Mental Health Clinics in Brooklyn, Queens, and Staten Island.  56.1 ¶¶15-16.  Effective October 31, 2017, HSVS reorganized its clinics, eliminating one Mental Health Clinic that Plaintiff oversaw and two Chemical Dependency Clinics.  HSVS also eliminated a director-level position in the Chemical Dependency Clinics.  HSVS decided to have Romero oversee the remaining three clinics the Queens Mental Health Clinic, the Brooklyn Mental Health Clinic, and the Brooklyn Chemical Dependency Clinic.  Although Plaintiff was overseeing the same number of Clinics, Plaintiff was now responsible for dealing with two oversight agencies.  56.1 ¶¶ 20-24.

Plaintiff received an Annual Performance Evaluation from Outlaw on or about August 1, 2017.  Plaintiff was evaluated as meeting or exceeding expectations in every category identified on the Annual Performance Evaluation.  56.1 ¶¶ 25.  This evaluation is the only Annual Performance Evaluation that Plaintiff received during her employment at HSVS.

In or about Spring 2018, Outlaw left her employment at HSVS and Saffayeh became Plaintiff's direct supervisor.  56.1 ¶¶ 38, 40.  In July 2018, Jude Alexandre ("Alexandre") became

3

Romero's supervisor as the Vice President of Integrated Health Services.  56.1¶ 39.  Plaintiff had regular supervision meetings with Alexandre. 56.1 ¶ 46. In August 2018, Alexandre and Saffayeh approved a $5,000 raise and a $5,000 bonus for Plaintiff.  56.1 ¶ 41-42.

Plaintiff did not receive an Annual Performance Evaluation in 2018.  Saffayeh, even as Romero's direct supervisor following Outlaw's departure, in 2018 admitted that she was not qualified to perform "a proper assessment because I didn't supervise her directly and my evaluations very much related to my observation of that person's work directly."  DS 41:21-42:22 Saffayeh also stated that Alexandre, Romero's subsequent direct supervisor was not qualified to complete the 2018 Annual Performance Evaluation of Romero, and that Outlaw would have been the only one able to do so.  Id.

### C.    Plaintiff's Termination of Employment

Beginning on September 10, 2018, Plaintiff underwent fertility treatment.  On September 10, 2018, Plaintiff called Alexandre and left him a voicemail message to inform him that she had to leave work due to medical problems.  56.1 ¶ 69.  On September 11, 2018, Plaintiff sent an email to Alexandre that she would be "out sick today." 56.1 ¶ 70.  Later on September 11, 2018, Plaintiff sent an email to Alexandre which provides: "I am still not feeling well. I will not be in tomorrow. Thank you." 56.1 ¶71.

On September 13, 2018, Plaintiff sent an email to Alexandre, which provides: "I will not be in today. Thank you. I expect that tomorrow I will be able to make it in." 56.1 ¶73.  On or about September 13, 2018, it was confirmed by Plaintiff's medical provider that Plaintiff was pregnant. PL 54.

Upon Plaintiff's return to work on September 17, 2018, Plaintiff provided a doctor's note, dated September 11, 2018, that Plaintiff was under Dr. Lekovich's "care at Reproductive Medicine

Associates of New York." The doctor's note continued that Plaintiff "will undergo a procedure today, and will be able to return to work Monday, September 17, 2018."  (the "September 11th Note).  According to HSVS's policy, an employee was required to provide a doctor's note after the third sick day.  56.1 ¶¶ 74, 69.  Pursuant to HSVS policy, Plaintiff physically handed the doctor's note to Alexandre at their weekly supervision meeting on September 17, 2018.  P72:21-25

On or about September 13, 2018, Alexandre received a complaint from one of HSVS's employees, Jason Meisel ("Meisel"), a Psychiatric Mental Health Nurse Practitioner who was supervised by Romero.  In a conversation with Alexandre, Meisel complained that Romero had not approved his request to leave work early on the eve of Yom Kippur so that he could make it home for the holiday. Meisel also complained to Alexandre about how he and others were being treated by Romero.  56.1 ¶¶51-52

Plaintiff denies the substance complaint and the documentary evidence refutes Meisel's allegations.  The September 13, 2018 email from Meisel to Alexandre and subsequent conversation relates to two separate requests for time off in September 2018.  First, Meisel requested, on or about September 10, 2018, two personal days on Friday, September 21, 2018, and Saturday, September 22, 2018.  Meisel worked every other Saturday and had clients scheduled on that day, as he was aware of, as evidenced by his request for a personal day on that Saturday.  Romero denied this request because it was "too short of notice," and there were already clients for Meisel on Saturday, September 22, 2018. 56.1 ¶¶ 52- 55.

Separately, on September 11, 2018, Meisel emailed Romero that he "was going over next week and realized that I (mistakenly thought) had Selisha put in for me to leave early on Tuesday for Yom Kippur.  Luckily I see I have no one scheduled from 6 on so was hoping to freeze that time and if anyone new needs to come in I can come in early (even 9) that day and then head to

my mom and synagogue."  Romero did not deny the request but responded, "Can we discuss when I get into the office?  Thank you."   No approval was needed from Romero for religious observances, and any resulting changes to his schedule would have been handled between Meisel and his office manager and administrators.  P: 123-125:3; Torren Aff. Ex. J.   Romero did not deny Meisel's request, and as per Defendant's policy religious observance requests and personal day requests cannot be denied.  56.1 ¶ 55.  P: 123-125:3; DS: 81:2-83:2. Meisel received the time off to leave work early on the evening of Yom Kippur.  DS: 85:4-10. Dawn Saffayeh admitted that Plaintiff did not violate Defendant's Handbook Policy.  DS: 90:9-13.

As for the alleged treatment of staff complained of by Meisel, Alexandre never discussed this with Romero.  This was the first employee complaint that Alexandre had documented and/or referred to Saffayeh regarding Romero.

Saffayeh did not discuss Meisel's complaint with Romero.  56.1 ¶ 55.

On September 26, 2018, HSVS's former Vice President of Human Resources, Michael Cutrona ("Cutrona"), and Alexandre met with Romero and communicated HSVS's decision to terminate her employment effective September 28, 2018. 56.1 ¶¶ 66.  P: 138:14-139:16. Romero's termination was confirmed in writing in a letter dated September 26, 2018.  56.1 ¶ 67.

Before her termination, Romero had never been disciplined, counseled, or warned during her employment.  Saffayeh acknowledged that HSVS has a progressive discipline protocol, starting with a verbal warning, trying to work directly with the employee and "giv[ing] them a number of chances," before progressing to a written warning to HR. However, Saffayeh did not discuss the alleged insubordination with Ms. Romero, never issued a written warning, and never referred the discipline to HR.  56.1 ¶ 62; DS: 67:7-69:15.

6

# ARGUMENT

## POINT I

## APPLICABLE SUMMARY JUDGMENT STANDARD

Summary judgment can be granted only when the submissions of the parties, taken together show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  American Ca. Co. Of Reading, PA. v. Nordic Leasing, Inc., 42 F.3d 725, 728 (2d Cir. 1994). *See also* Rodal v. Anesthesia Group of Onondaga, PC, 369 F.3d 113 (2d Cir. 2004), Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001). In connection with a motion for summary judgment, the court's function is to determine whether a material factual issue exists, not to resolve any existing factual issues. United States v. Diebold Inc., 369 US 654 (1962), Eastman Mach. Co. V. United States, 841 F.2d 469, 473 (2d Cir. 1988). A court may grant summary judgment under Fed. R. Civ. P. 56(c) only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is proper only when, "viewing the evidence in the light most favorable to the non-movant, the court can determine that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir.1993) (quoting Suburban Propane v. Proctor Gas, Inc.,953 F.2d 780, 788 (2d Cir.1992)). The court must resolve all ambiguities and draw all doubtful inferences against the moving parties. Trans-Orient Marine Corp. v. Star Trading & Marine, Inc. 925 F.2d 566, 572 (2d Cir.1991). Ordinarily, plaintiff's evidence establishing a prima facie case and Defendant's production of a non-discriminatory reason for the employment action raise a question of fact to be resolved by the factfinder after a trial.  Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995).  Summary

judgment is appropriate at this point only if the employer's nondiscriminatory reason is dispositive and forecloses any issue of material fact. Lastly, a trial court must be careful about granting summary judgment to an employer where its intent is at issue. Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 103 (2d Cir. 1989).

## POINT II

## PLAINTIFF'S DISCRIMINATION CLAIM UNDER TITLE VII

### A.      Standard to Evaluate Pregnancy Discrimination Claims

Plaintiff has alleged discrimination claims because of Plaintiff's pregnancy, perceived pregnancy, and a pregnancy-related medical condition under Title VII.

Title VII prohibits "discriminat[ion] against any individual with respect to…[his or her] compensation, terms, conditions, or privileges of employment, because of the individual's…sex." 42 U.S.C. § 2000e-2(a)(1). The enactment of the Pregnancy Discrimination by Congress in 1978 amended Title VII's definition section clarifying, "The terms 'because of sex' or 'on the basis of sex' include…because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes….as other persons not so affected but similar in their ability or inability to work. *Id.* § 2000e(k). *see* Labarbera v. NYU Winthrop Hospital, 527 F.Supp.3d 275 (EDNY 2021)

Pregnancy discrimination under Title VII, NYSHRL, and NYCHRL are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 US 792, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973). To establish a claim of pregnancy discrimination, , Plaintiff must first establish a *prima facie* case showing that: "(a)[s]he is a member of a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action;

and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination." Graziano v. First Choice Medical, PLLC, 2019 WL 4393668, *5 (EDNY 2019 internal citations omitted).

## B.    Plaintiff's *Prima Facie* Case of Discrimination

### 1.    Plaintiff Was a Member of a Protected Class

Defendant does not dispute that Romero was pregnant at the time of her termination, establishing that she is a member of a protected class.  Instead, Defendant argues that Plaintiff fails to establish a *prima facie* case of pregnancy discrimination, stating, "there is no evidence that anyone at HSVS knew of Plaintiff's pregnancy or fertility treatments prior to her termination." (Def. 's Memo at p. 14).  To the contrary, on September 10, 2018, Plaintiff left a voicemail for Jude Alexandre ("Alexandre"), her supervisor, that she needed to leave from work due to medical problems.  (56.1 ¶69).  The following day, she emailed Alexandre that she would be "out sick" that day, and later that evening emailed that she was "still not feeling well" and would not be in the on September 12.  (56.1 ¶70).  Upon Romero's return to work on September 17, 2018, she handed a doctor's note to Alexandre, dated September 11, 2018, that Plaintiff was under Dr. Lekovich's "care at Reproductive Medicine Associates of New York."  The doctor's note continued that Plaintiff, "will undergo a procedure today, and will be able to return to work Monday September 17, 2018."  Torren Aff. Ex. M; 56.1 ¶70; P72:21-25.  Romero handed the note to Alexandre at their weekly supervision meeting on September 17, 2018, in accordance with HSVS's policy was that an employee was required to provide a doctor's note after the third sick day.  56.1 ¶¶ 74, 69.

There exists a factual dispute as to whether Alexandre read the September 11 Doctor's Note during Plaintiff's employment and it can be reasonably inferred that he did.  First, Alexandre

was aware the HSVS's policy that an employee was required to provide a doctor's note after the third sick day.  (56.1 ¶80).  Plaintiff had repeatedly communicated with Alexandre during the period of time that she was out sick and in the first meeting following her absences, Plaintiff handed the September 11 Doctor's Note to Alexandre.  (56.1 ¶79; P72:21-25).  A jury could reasonably infer that the employer knew that the plaintiff was pregnant or undergoing fertility treatments from the above circumstances.  *See* Lambert v. McCann Erickson, 543 F.Supp2d 265, 277-278 (SDNY 2008).

Additionally, Plaintiff is entitled to rely on the principle of "general corporate knowledge" in that it is not necessary to prove that the specific actors had knowledge.  The Second Circuit has explicitly stated that "general corporate knowledge that plaintiff has engaged in a protected activity is sufficient to satisfy the knowledge requirement," Papelino v. Albany Coll. of Pharmacy of Union Univ., 633 F.3d 81, 92 (2d Cir. 2011).  *See also* Perkins v. Memorial Sloan-Kettering Cancer Ctr., 2005 US Dist. LEXIS 22541 (SDNY October 5, 2005) *quoting* Gordon v. NYC Bd. of Ed., 232 F.3d 111, 116 (2d Cir. 2000).  Plaintiff put Defendant on notice by providing her September 11 Doctors Note regarding her fertility treatments, in accordance with HSVS's policy of providing a doctor's note following three consecutive sick days.  It is not necessary that Plaintiff prove that the specific actors knew of the protected activity as long as she can demonstrate general corporate knowledge.  See Papelino v. Albany Coll. of Pharmacy of Union Univ., 633 F.3d 81, 92 (2d Cir. 2011).  Here, even if the agents who carried out the adverse action did not know about the complainant's protected activity, the 'knowledge' requirement is met if the legal entity was on notice.

Alexandre's testimony that he did not read the September 11 Doctor's Note (a clear factual dispute which involves issues of credibility) is not dispositive of whether HSVS "knew or had

reason to believe that Romero was pregnant." (56.1 ¶79) Ingenito v. Riri USA, Inc., 2013 WL 752201, 10 (E.D.N.Y. 2013).  An employer cannot escape liability based on one employee's assertion that he ignored or did not read the medical note physically handed to him in due course of business and as per the employer's policy.  Similarly, in Bainlardi v. SBC Warbug, Inc., 1998 US Dist. LEXIS 13491 (SDNY September 1, 1998) the plaintiff failed to directly apprise the decisionmakers of her pregnancy but spoke of her pregnancy on the telephone in the immediate vicinity of a decisionmaker.  The decisionmaker's denial of having overheard the pregnancy-related phone calls did not preclude a finding upon summary judgment that the decisionmakers possessed knowledge of Plaintiff's protected status. Id.

Thus, Plaintiff has satisfied the first prong of the McDonnell-Douglas framework, that she was a member of a protected class.  Defendant has not disputed, for purposes of this motion, that Plaintiff satisfied the second and third prongs, as Plaintiff was qualified for her position and suffered an adverse employment action.

### 2.    There Exists an Inference of Discrimination

Defendant argues that Plaintiff has failed to satisfy the fourth prong of her *prima facie* burden of establishing that her termination occurred under circumstances giving rise to an inference of discrimination.  A plaintiff's burden to establish a prima facie case of discrimination "is not onerous."  Burdine, 450 U.S. at 253, 101 S. Ct. at 1094.  Gallo v. Prudential Residential Services, Ltd. Partnership, 22 F.3d at 1225 (2d Cir. 1994).  Direct evidence is not necessary. *See* Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1187 (2d Cir.), cert. denied US 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).  In deciding a motion for summary judgment, when confronted with facts which several differing conclusions may be drawn, the inferences drawn from such underlying facts are viewing the light most favorable to the non-movant.  Id.

11

First, temporal proximity is sufficient to raise an inference of discrimination to plausibly state a claim of employment discrimination. Vale v. Great Neck Water Pollution Control District. 80 F. Supp. 3D 426 437 (EDNY 2015).  Here, Plaintiff was employed by HSVS as the Director of Mental Health Clinics for over two years until her discriminatory termination on September 26, 2018, less than two weeks after undergoing fertility treatments and learning she was pregnant. Specifically, upon Plaintiff's return to work on September 17, 2018, Plaintiff provided a doctor's note, dated September 11, 2018, that Plaintiff was under Dr. Lekovich's "care at Reproductive Medicine Associates of New York." 56.1 ¶84.  Plaintiff was subsequently terminated from her employment just nine days later, on September 26, 2018.  This temporal proximity is "very close," and well within the range the Supreme Court has indicated can establish "a prima facie case "of causation.  See Clark County School Dist. v. Breeden 532 US 268, 273-74 (2001).

Courts "frequently find a period of a few weeks sufficient to allow a jury to infer a causal connection between the protected act and the adverse employment action." Fernandez v. Woodhull Med. And Mental Health Ctr., No. 14-cv-CV-4191, 2017 WL 3432037, at *8(EDNY August 8, 2017); see Kwan v. Andalex Grp. LLC, 737 F.3d 834, 835 (2d Cir. 2013) ("The three-week period from [the plaintiff's complaint to her termination is sufficiently short to make a prima facie showing of causation indirectly through temporal proximity."); Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004)(ruling that an issue of fact existed as to retaliation causation where supervisors recommended terminating the plaintiff two weeks after his complaint); Treglia v. Town of Manlius, 313 F.3d 713, 721 (2d Cir. 2002)("The temporal proximity between [plaintiff's] protected activity in February 1998 and the allegedly adverse employment actions in March 1998 is sufficient to establish the required causal link.")

In this instance, while the temporal proximity is sufficient to make a prima facie showing of causation, Plaintiff has presented additional evidence supporting an inference of discrimination.

Defendant further argues that to establish the fourth prong of the *prima facie* case, "Plaintiff is obliged to offer evidence indicating that persons who actually participated in her termination decision had such knowledge." *Citing* Lambert v. McCann Erickson, 543 F.Supp.3d 275 (E.D.N.Y. 2008). It is undisputed that Plaintiff's direct supervisor, Alexandre, whom Plaintiff provided the September 11 note to and was aware of Plaintiff's absences the prior week, **actually participated** in the decision to terminate Plaintiff's employment. Even assuming, as Defendant asserts, that Saffayeh recommended and made the decision to terminate Plaintiff's employment, she did so in consultation with Alexandre. 56.1 ¶ 61. A call was held on September 14, 2018, between Saffayeh, Alexandre, HeartShare's Corporate Compliance Officer, Stan Capela ("Capela"), HeartShare's Human Resources Manager, Jose Vinluan ("Vinluan") and HeartShare's Special Assistant to the President & CEO, Hayley Cowitt, Esq. ("Cowitt") to discuss the latest complaint and whether Romero's termination was warranted based on the alleged pattern of behavior exhibited by her. Outside counsel also participated in part of the conference call. 56.1 ¶ 59. Thereafter, the decision to terminate Romero on September 26, 2018, Saffayeh made in consultation with Alexandre, Cutrona, Cowitt, Capela, and Vinluan. 56.1 ¶ 61. Defendant cannot now ignore its own stated material facts by arguing that Saffayeh "made the decision and had no knowledge of the September 11 Note, that Plaintiff was pregnant, or that Plaintiff had underwent fertility treatments prior to Plaintiff's termination," and thus there can be no inference of discrimination. (Def. 's Memo p. 18). Defendant admits that Alexandre participated in the

September 14th call and Saffayeh made her decision to terminate Romero's employment in consult with Alexandre, and others.

Defendant's further argument, that Saffayeh recommended the termination of Romero's employment on September 14, 2018, and thus could not have considered the September 11th note in her decision making, is also not fatal to Plaintiff's claim and refuted by the evidence. First, Defendant's statement of material facts does not assert that a recommendation of termination was made on September 14th by Saffayeh, but rather a call was held with Saffayeh, Alexandre and others to "discuss the latest complaint and whether Plaintiff's termination was warranted based on a pattern of behavior exhibited by Plaintiff." 56.1 ¶ 59. At the time of the call, Plaintiff had communicated with Alexandre that week regarding her absences from work, leaving a voicemail on September 10th and emailing on September 11th that she would be "out sick today" and on September 13th that, "I will not in today. Thank you. I expect that tomorrow I will be able to make it in." 56.1 ¶¶ 72-3. Thus, at the time of the September 14th call, Alexandre was aware of Romero's absences that week, the reason for which would be stated in the September 11th Note Romero provided to Alexandre upon her return.

There is no assertion by Defendant that a recommendation or decision to terminate Plaintiff's employment was made on the September 14th call. Romero returned to work on September 17th and, as per policy, provided a doctor's note, dated September 11, 2018, that Romero was under Dr. Lekovich's "care at Reproductive Medicine Associates of New York." 56.1 ¶84. Cutrona and Alexandre met with Romero on September 26, 2018 to inform her of Defendant's decision to terminate her employment effective September 28th. 56.1 ¶ 66. This decision was confirmed in writing to Romero on the same date. 56.1 ¶ 67. Defendant cannot assert that the decision to terminate Plaintiff was made before Alexandre's receipt of the

14

September 11th note, and thus Plaintiff has established that a reasonable jury could conclude that she was terminated under circumstances giving rise to an inference of discrimination.

The totality of the circumstances surrounding Plaintiff's termination as described above, satisfy Plaintiff's showing of a *prima facie* case of discrimination.

## C.   Defendant's Purported Legitimate Non-Discriminatory Reasons for Its Actions are Pretextual

Following the showing of a *prima facie* case of discrimination, the burden shifts to Defendant to set forth a legitimate, non-discriminatory reason for Plaintiff's termination.

The reasons set forth by HSVS for Plaintiff's termination, that (1) Alexandre became aware of a complaint from an employee, regarding leaving work early for Yom Kippur, (2) the complaining employee said other employees were unhappy with their treatment, and (3) insubordination, are directly refuted by the evidence as set forth below. HSVS's reasons for Plaintiff's termination are pretextual and her termination was motivated her pregnancy.

First, the circumstances described above regarding temporal proximity are also to be considered in determining whether the evidence of pretext "may permit a trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Prods., 530 US 133, 148 (2000). The Second Circuit recognizes that a strong temporal connection is circumstantial evidence of pretext. Singh v. Knuckles, Komosinski & Manfro, LLP, 2020 WL 6712383, *11 (SDNY 2020). Moreover, when considering the overwhelming evidence presented below refuting each of Defendant's stated bases for termination, Plaintiff has satisfied her burden on a motion for summary judgment of showing pretext.

### 1.    Alleged Prior Complaints

Defendants allege that a basis for Romero's termination was prior employee complaints regarding her management style and the manner in which she communicated with others.  To the extent that other employee complaints formed the basis for termination, the complaints made to Human Resources by employees as to Plaintiff's treatment of her as a manager were unsubstantiated, and Plaintiff was never subject to any form of discipline.   (56.1 ¶58, 62). Moreover, the most recent of these prior employee complaints (excluding the Meisel complaint discussed below) referenced by Defendant was from January 2018, seven months before Plaintiff's termination.  (56.1 ¶ 37).

Defendant relies on Romero's last Annual Performance Evaluation, performed in August 2017 by her supervisor Jennifer Outlaw, to show that Defendant expressed a desire for Plaintiff to improve her management and leadership style.  (56.1 ¶ 25-27).  However, this performance evaluation reveals that Romero was meeting or exceeding expectations in every category, including the relevant categories of "cooperation", "professionalism" and "attitude".  Def. 's Ex. 7.

Further, to the extent that Defendant now cites these prior complaints as a legitimate basis for termination, Defendant's actions directly refute that conclusion.  Outlaw left HSVS in or about Spring 2018, at which time Saffayeh became Plaintiff's direct supervisor until Alexandre filled the vacancy in July 2018.  Neither Saffayeh nor Alexandre discussed any employee complaints with Plaintiff and never disciplined Plaintiff, despite the opportunity to do so as her direct supervisors in the months leading up to their decision to terminate Plaintiff's employment.  (56.1 ¶58, 62).  Admittedly, Saffayeh and Alexandre did not counsel Plaintiff on any of these alleged

16

issues with her management style or performed an annual performance review as required because they were admittedly not qualified to do so, during the time they directly supervised her.

Instead, just one month before Romero's termination, Saffayeh gave her a raise and bonus. This clearly undercuts and calls into question the credibility of Saffayeh's alleged concern about these prior unsubstantiated employee complaints that she would use a few weeks later as justification for Ms. Romero's termination.  Additionally, during the restructuring of HSVS's clinics in October 2017, Romero was given additional managerial responsibilities, supervising both the Mental Health and Chemical Dependency clinics operated by HSVS.  In sum, reliance on these previous employee complaints as a basis for termination is pretextual.  56.1 ¶ 41-42.

## 2.    Meisel's Complaint Regarding Plaintiff

Defendant alleges that the impetus for Romero's firing was a complaint on or about September 13, 2018, made by Jason Meisel, a Psychiatric Mental Health Nurse Practitioner, who was supervised by Romero. Defendant alleges that Meisel had complained to Alexandre that Romero had not approved his request to leave work early on the eve of Yom Kippur. 56.1 ¶¶ 51-57

First, Plaintiff did not deny an employee's request to leave early for Yom Kippur.  56.1 ¶¶ 51-57.

The September 13, 2018 email from Meisel to Alexandre and subsequent conversation is related to two separate requests for time off in September 2018.  First, Meisel requested, on or about September 10, 2018, two personal days on Friday, September 21, 2018 and Saturday, September 22, 2018.  Dugan Ex. 4.  Meisel worked every other Saturday and had clients scheduled on that day, as he was aware of, as evidenced by his request for a personal day on that Saturday.

Romero denied this request because it was "too short of notice" and there were already clients for Meisel on Saturday, September 22, 2018. 56.1 ¶¶ 51-57; Torren Aff., Ex. J; Dugan Ex. 4.

Separately, on September 11, 2018, Meisel emailed Romero that he "was going over next week and realized that I (mistakenly thought) had Selisha put in for me to leave early on Tuesday for Yom Kippur.  Luckily I see I have noone scheduled from 6 on so was hoping to freeze that time and if anyone new needs to come in I can come in early (even 9) that day and then head to my mom and synagogue." PL 120.  Romero did not deny the request but responded, "Can we discuss when I get into the office?  Thank you." Dugan Ex. 4 at PL120.  No approval is needed from Plaintiff for religious observances and it would have been handled between Meisel and his office manager and administrators.  PL 123-125:3. Romero did not deny Meisel's request, and as per Defendant's policy, religious observance requests s cannot be denied.  PL 123-125:3; DS Tr. 81:2-83:2. Meisel received the time off to leave work early on the evening of Yom Kippur.  DS Tr. 85:4-10. Dawn Saffayeh admits that Plaintiff did not violate Defendant's Handbook Policy. DS Tr. 90:9-13; 56.1 ¶¶ 51-57.

As for the alleged treatment of staff complained of by Meisel, Alexandre never discussed this with Romero, and this was the first employee complaint that Alexandre had documented and/or referred to Saffayeh regarding Romero.  JA Tr. 60:5-61:8; 63:6-23.

At the time of Romero's termination, Saffayeh and Alexandre signed off on Plaintiff's "staffing change form", dated October 17, 2018, that in referencing this event, stated, "the employee would not approve a staff request for taking time off for religious observances." Def. 's Ex. 7.  Now that it has been shown that the documentary evidence directly refutes that basis for termination, Defendant now relies on what is believed to be a "hostile tone" in the email that was

warranting Romero's immediate termination. Defendant's changing stated reasons for Plaintiff's termination is further evidence of pretext.

Additionally, in deciding to terminate Romero, Saffayeh acknowledges that HSVS has a progressive discipline protocol that is used, starting with a verbal warning, trying to work directly with the employee and "giv[ing] them a number of chances," prior to progressing to a written warning to HR.  Saffayeh never even spoke to Plaintiff regarding this employee complaint, never issued a written warning to Plaintiff, and never referred the discipline to HR.  56.1 ¶62.  Instead, Saffayeh rushed to terminate Romero just days after her fertility treatments, based on the pretextual reasons stated above.

**3.       Plaintiff's Alleged Insubordination**

While seemingly having now abandoned the argument, Defendant has previously alleged that Romero was insubordinate as she refused to implement a policy to conduct mental health assessments at the Clinics on everyone who came into foster care at HSVS in accordance with ACS requirements.  56.1 ¶ 63.  This allegation has been directly refuted, as Plaintiff did not refuse to implement this plan at the Clinics because no plan had been created at that time. Romero and Alexandre discussed foster children getting assessments at the mental health clinic and what the process would be like. Again, there was not a plan or proposal for Romero to implement at the time.  56.1 ¶ 62-63.  PL 136-137.

**4.       Additional Evidence of Pretext**

In addition to directly refuting the legitimate reasons offered for termination, Plaintiff also offers evidence that the circumstances surrounding her termination support the finding that the purported reasons were pretextual.  First, Saffayeh acknowledges that HSVS has a progressive discipline protocol that is used, starting with verbal warning, trying to work directly with the

employee and "giv[ing] them a number of chances," prior to progressing to a written warning to HR.  Saffayeh did not discuss the alleged insubordination with Plaintiff, never issued a written warning to her, and never referred the discipline to HR.  DS Tr. 67:7-69:15.

Lastly, Romero did not receive an Annual Performance Evaluation in 2018.  Saffayeh, even as Romero's direct supervisor following Outlaw's departure, in 2018 admitted that she was not qualified to perform "a proper assessment because I didn't supervise her directly and my evaluations very much related to my observation of that person's work directly."  DS 41:21-42:22 Saffayeh also stated that Alexandre, Romero's subsequent direct supervisor was not qualified to complete the 2018 Annual Performance Evaluation of Romero, and that Outlaw would have been the only one able to do so.  Id.   Saffayeh despite admittedly not being qualified to evaluate Romero's performance in 2018, which includes evaluations of her management style and interactions with other employees, still made the determination to terminate Romero's employment, the most harsh sanction in an employer-employee relationship.

The above satisfies Plaintiff's burden of showing that Defendant's stated reasons for her termination were merely a pretext for discrimination.

Based on the above, Plaintiff has met her burden under the appropriate summary judgment standard and thus it requested that Defendant's motion for summary judgment as to Plaintiff's Title VII claims be denied.

## POINT III

## PLAINTIFF'S NYSHRL AND NYCHRL CLAIMS

Courts have deemed pregnancy discrimination actionable under both the NYSHRL and NYCHRL.  NY Exec. Law Sec. 296(1)(a) and NYC Admin Code Sec. 8-107(1)(a)(2)-(3).  Further, while Defendant disputes that discrimination based on perceived pregnancy is actionable under Title VII, it concedes that it is explicitly actionable under the NYCHRL.  NYC Admin. Code Sec. 8-107(1)(a)(2)-(3).

First Plaintiff's NYSHRL claims are to be reviewed under the same Title VII set forth in "Point II" above, and thus for those same reasons, Defendant's motion for summary judgment should be denied.

However, New York City Human Rights Law claims are to be analyzed "separately and independently from federal and state discrimination claims." Mihalik v. Credit Agricole Cheuvreux North America, Inc., 715 F.3d 102, 113 (2d Cir. 2013).  CHRL claims "explicitly requires an independent liberal construction analysis in all circumstances, and analysis that must be targeted to understanding and fulfilling what the statute characterizes as the CHRL's uniquely broad and remedial purposes, which go beyond those of counterpart State or federal civil rights laws. Bennet v. Health Mgt. Sys., Inc., 92 A.D.3d 29 [1st Dep't 2011].  The New York State Court of Appeal, "has emphasized that the Restoration Act's amendment of Section 8-130 of the CHRL was enacted to ensure the liberal construction of the CHRL by requiring all provisions of the CHRL be construed "broadly in favor of discrimination plaintiffs." Bennett, 92 A.D.3d 29; Albunio v. City of New York, 16 N.Y.3d 472, 477, 922 N.Y.S2d 244 [2011].

In the context of the CHRL, the Restoration Act provides a clear and unambiguous answer: a central purpose of the legislation was to resist efforts to ratchet down or devalue the means by

which those intended to be protected by the City HRL could be most strongly protected.  Williams v. New York City Housing Authority, 872 NYS 2d 27 (1st Dep't 2009).  These concerns warrant the strongest possible safeguards against depriving an alleged victim of discrimination of a full and fair hearing before a jury of her peers by means of summary judgment. Evidence of pretext should in almost every case indicate to the court that a motion for summary judgment must be denied, Bennet v. Health Mgt. Sys., Inc., 92 A.D.3d 29, 936 N.Y.S.2d 112, (1st Dep't 2011).  The standard for NYCHRL claims is the lesser burden of, "a rule by which liability is normally determined simply by the existence differential treatment." Williams v. New York City Housing Authority, 872 NYS 2d 27 (1st Dep't 2009).

As set forth at length above in "Point II", Plaintiff has met her burden under Title VII and the NYSHRL.  Therefore, she has also satisfied the more liberal pleading standard under the NYCHRL.

**CONCLUSION**

For the foregoing reasons, it is respectfully requested that this Court deny Defendant's

motion for summary judgment in its entirety and such other and further relief as the Court deems

just and proper.

Dated: New York, New York
        December 23, 2021                STEWART LEE KARLIN
                                        LAW GROUP, P.C.


                                   /s/ Daniel E. Dugan, Esq.
                                  DANIEL E. DUGAN, ESQ.
                                  *Attorney for Plaintiff*
                                  111 John St., 22nd Floor
                                  New York, NY 10038
                                  (212) 792-9670
                                  dan@stewartkarlin.com

23