UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

XAVIERA ROMERO,

               *Plaintiff*,              **MEMORANDUM AND ORDER**

   -against-                   19-CV-7282(KAM)(ST)

ST. VINCENT'S SERVICES, INC. D/B/A
HEARTSHARE ST. VINCENT'S SERVICES,

               *Defendant*.

---------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

On November 27, 2019, Plaintiff Xaviera ("Plaintiff") Romero commenced the instant action in Supreme Court of the State of New York, County of Kings, against Defendant St. Vincent's Services, Inc. d/b/a Heartshare St. Vincent's Services ("Defendant" or "HSVS"), alleging discrimination based on her pregnancy, perceived pregnancy, and pregnancy-related medical conditions, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Act of 1978, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). (ECF No. 1-1, Complaint ("Compl.").) On December 30, 2019, Defendant timely removed the action to the United States District Court for the Eastern District of New York. *See* 27 U.S.C. § 1331. (ECF No. 1, Notice of Removal.) On December 3, 2020, Plaintiff filed the Amended Complaint, (ECF No. 22, Amended Complaint ("Amended Compl."), which Defendant answered on

December 21, 2020.  (ECF No. 25, Answer to the Amended Compl.)  On June 18, 2021, the parties filed a joint letter advising the Court that discovery was complete.  (ECF No. 30.)

Presently before the Court is Defendant's motion for summary judgment.  (ECF No. 44-1, Notice of Motion for Summary Judgment.)  For the reasons set forth below, Defendant's motion is **GRANTED**.

<u>**BACKGROUND**</u>

The following facts are drawn from the parties' submissions in connection with this motion, including the Rule 56.1 Statement of Facts and opposing 56.1 Statement.[1]  Upon consideration of the motion for summary judgment, the Court must construe the facts in the light most favorable to the non-moving party.  *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).  Unless otherwise noted, the following facts are undisputed, or the opposing party has not proffered evidence in the record to dispute them.

---

[1] (*See* ECF Nos. 44-2, Defendant's 56.1 Statement ("Def. 56.1"); 44-3–44-6, Joint Deposition Transcript Appendix and Deposition Transcripts; 44-7, Toren Affirmation ("Toren Affirm") and exhibits attached thereto; 44-8, Saffayeh Affidavit ("Saffayeh Aff.") and exhibits attached thereto; 45-1, Plaintiff's Response to Defendant's 56.1 Statement ("Pl. Resp. 56.1"); 45-3–45-6, Dugan Declaration ("Dugan Decl.") and exhibits attached thereto.)

## I.    Plaintiff's Employment with HSVS

HSVS is a not-for-profit human services agency that assists individuals, children, and families with overcoming the challenges of family crises, addiction, mental illness, and poverty.  (Def. 56.1 ¶ 1.)  HSVS is an affiliate of HeartShare Human Services of New York ("HeartShare").  (*Id.* ¶ 2.)  Plaintiff began her employment at HSVS on or about September 6, 2016, as the Director of Mental Health Clinics, which was a role within HSVS's Integrated Health Services Division.  (*Id.* ¶¶ 4, 7–8.)  Plaintiff's supervisor at the time she began her employment at HSVS was Jennifer Outlaw ("Outlaw"), the Senior Vice President of Integrated Health Services, who, in turn, reported to Dawn Saffayeh ("Saffayeh"), the Executive Director of HSVS.  (*Id.* ¶¶ 9–10.)

During Plaintiff's employment at HSVS, the Integrated Health Services Division consisted of approximately four programs, including mental health clinics licensed by the New York State Office of Mental Health ("OMH") under Article 31 of the New York State Mental Hygiene Law ("Mental Health Clinics"), and chemical dependency treatment program clinics licensed by the New York State Office of Alcoholism and Substance Abuse Services ("OASAS") under Article 32 of the New York State Mental Hygiene Law ("Chemical Dependency Clinics" and together with the Mental Health Clinics, the "Clinics").  (*Id.* ¶¶ 12–13.)  At the time Plaintiff commenced her employment, HSVS operated three outpatient Mental Health

Clinics and three Chemical Dependency Clinics, with one of each in Brooklyn, Queens, and Staten Island. (*Id.* ¶¶ 15, 17.)

As the Director of the Mental Health Clinics, Plaintiff was responsible for their day-to-day operations, which included managing the supervisors, clinicians, and psychiatrists at the clinics, staff support, representing HSVS at external meetings, overseeing staff productivity and scheduling, the office space, staffing, and budget compliance, and working collaboratively with other HSVS divisions. (*Id.* ¶ 16.)

On or about October 31, 2017, HSVS closed the Queens and Staten Island Chemical Dependency Clinics and the Staten Island Mental Health Clinic, and tasked Plaintiff with overseeing the three remaining Clinics—the Queens and Brooklyn Mental Health Clinics and the Brooklyn Chemical Dependency Clinic. (*Id.* ¶¶ 21–23.) As a result, Plaintiff was overseeing the same number of Clinics but was required to liaise with a second oversight agency, the OASAS. (*Id.* ¶ 24.) In August 2018, Plaintiff received a retroactive raise and a bonus for her added responsibility of overseeing the Brooklyn Chemical Dependency Clinic. (*Id.* ¶¶ 41–42, 44.)

Outlaw left HSVS in or about Spring 2018, and Jude Alexandre ("Alexandre") became Plaintiff's supervisor as the new Vice President of Integrated Health Services. (*Id.* ¶¶ 38–39.)

4

## II.  Plaintiff's Termination

During Plaintiff's employment at HSVS, HSVS received multiple complaints from employees regarding Plaintiff.  (*Id.* ¶ 32.)  Saffayeh had either received complaints or was made aware of complaints about Plaintiff's demeanor from Plaintiff's staff and heads of other HSVS divisions.  (*Id.* ¶ 34.)  Alexandre received employee complaints about Plaintiff's communication and attitude. (*Id.* ¶ 50.)

On or about September 13, 2018, Alexandre received a complaint from one of HSVS's employees, Jason Meisel ("Meisel"), a Psychiatric Mental Health Nurse Practitioner, who was supervised by Plaintiff.  (*Id.* ¶ 51.)  That same day, Alexandre informed Saffayeh of Meisel's complaint via email. (*Id.* ¶ 57.)

A call was held on September 14, 2018 between Saffayeh, Alexandre, and HeartShare's Corporate Compliance Officer, Stan Capela ("Capela"), Human Resources Manager, Jose Vinluan ("Vinluan"), and Special Assistant to the President & CEO, Hayley Cowitt, Esq. ("Cowitt"), to discuss the latest complaint and whether Plaintiff's termination was warranted based on her pattern of behavior.  (*Id.* ¶ 59.)  Outside counsel also participated in part of the conference call.  (*Id.*)  Saffayeh made the decision to terminate Plaintiff, in consultation with Michael Cutrona ("Cutrona"), Heartshare's former Vice President of Human

Resources, Alexandre, Capela, Vinluan, and Cowitt.  (*Id.* ¶¶ 60–61.)

On September 26, 2018, Cutrona and Alexandre met with Plaintiff and informed her of HSVS's decision to terminate her employment effective September 28, 2018.  (*Id.* ¶ 66.)  Plaintiff's termination was confirmed in writing in a letter, dated September 26, 2018.  (*Id.* ¶ 67.)

### III. Plaintiff's Pregnancy

In August and September 2018, Plaintiff underwent In Vitro Fertilization treatment at Reproductive Medicine Associates of New York ("RMA"), (ECF No. 44-4, Plaintiff's Deposition Transcript ("Pl. Dep. Tr."), at 48:23–50:9), but did not disclose this treatment to HSVS.  On September 10, 2018, Plaintiff called Alexandre and left him a voicemail informing him that she had to leave from work due to medical problems.  (Pl. Resp. 56.1 ¶ 69.) Plaintiff was subsequently absent from work on September 11, 12, and 13, 2018.  (Def. 56.1 ¶¶ 70–73.)  During this time, Plaintiff left voicemail or email messages with Alexandre that she would be out but did not disclose the reasons.  (Pl. Resp. 56.1 ¶¶ 69–74.) On September 11, 2018, Plaintiff had an embryo transfer, and on September 13, 2018, she received a phone call from a nurse at RMA, who told Plaintiff that her pregnancy was viable.  (Pl. Dep. Tr. at 53:25–54:5, 54:17–56:10.)

Plaintiff returned to work on September 14, 2018. (*Id.* at 72:10–12.)  Plaintiff testified during her deposition that on September 17, 2018, she gave Alexandre a doctor's note, in an envelope, that stated that she was under the care of Dr. Jovana Lekovich at RMA and had "a procedure" on September 11, 2018 (the "September 11 Note").  (Pl. Resp. 56.1 ¶ 74; Def. 56.1 ¶ 75; Exhibit 8 to Toren Affirm.)  Alexandre testified during his deposition that he never received the September 11 Note from Plaintiff.  (ECF No. 44-6, Alexandre Deposition Transcript ("Alexandre Dep. Tr."), at 85:13–17.)  Plaintiff did not provide the September 11 Note to any other HSVS or HeartShare employee. (Pl. Resp. 56.1 ¶ 81.)  The September 11 Note does not indicate the nature of Plaintiff's "procedure" or that Plaintiff was pregnant. (*Id.* ¶ 87; Exhibit 8 to Toren Affirm.)  Plaintiff never informed Alexandre or any other HSVS or Heartshare employee, verbally or in writing, that she was pregnant.  (Pl. Resp. 56.1 ¶¶ 85–86.)  Plaintiff did not witness anyone at HSVS make any remarks about her pregnancy or perceived pregnancy. (*Id.* ¶ 91.)

## IV.  Plaintiff's Instant Federal Discrimination Complaint

On November 27, 2018, Plaintiff filed an initial administrative complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was terminated from her employment at HSVS due to her pregnancy, in violation of Title VII.  (Exhibit 5 to Dugan Decl.)  The 56.1 Statements do not state

that the EEOC issued a right to sue letter, and the right to sue letter was not attached as an exhibit in the motion papers.

Plaintiff commenced this action on November 27, 2019, alleging discrimination based on her pregnancy, perceived pregnancy, and pregnancy-related medical conditions, pursuant to Title VII, the NYSHRL, and the NYCHRL.  (Compl.)

## LEGAL STANDARD

Summary judgment shall be granted to a movant who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'"  *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

On a motion for summary judgment, the movant has the burden of demonstrating the absence of any disputed issues of material fact and entitlement to judgment as a matter of law. *Rojas*, 660 F.3d at 104.  "In determining whether a genuine issue

of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A moving party may indicate the absence of a factual dispute by "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  Put another way, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

Once the moving party has met its burden, "the onus shifts to the party resisting summary judgment to present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).  The nonmoving party is required to "go beyond the pleadings," *id.*, and "may not rest upon mere conclusory allegations or denials[.]" *Castro v. Cnty. of Nassau*, 739 F. Supp. 2d 153, 165 (E.D.N.Y. 2010) (citation omitted).  Rather, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In deciding a motion for summary judgment, the court is dutybound not to weigh

evidence, assess the credibility of witnesses, or resolve issues of fact. *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994) (citations omitted).

"Employment discrimination cases raise special issues on summary judgment." *Kenney v. N.Y.C. Dep't of Educ.*, No. 06-cv-5770, 2007 WL 3084876(HB), at *3 (S.D.N.Y. Oct. 22, 2007). Specifically, summary judgment may not be appropriate in employment discrimination cases that involve a dispute concerning the "employer's intent and motivation." *Id.*; *see also Holcomb*, 521 F.3d at 137.

The Second Circuit has noted, however, that it "went out of [its] way to remind district courts that the impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal quotation marks omitted); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("[T]rial courts should not 'treat discrimination differently from other ultimate questions of fact.'") (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993)); *Holcomb*, 521 F.3d at 137 ("Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment.").

## DISCUSSION

I.   **Plaintiff's Pregnancy and Perceived Pregnancy
     Discrimination Claims Fail under Title VII and State Law**

   A.   **Legal Standard**

   Title VII provides, in relevant part, that "[i]t shall
be an unlawful employment practice for an employer . . . to
discharge any individual . . . because of such individual's . . .
sex."  42 U.S.C. § 2000e-2(a)(1).  The Pregnancy Discrimination
Act amended Title VII's definition of "because of sex" to include
"because of or on the basis of pregnancy, childbirth, or related
medical conditions . . . ."  *See* 42 U.S.C. § 2000e(k); *Young v.
United Parcel Serv., Inc.*, 575 U.S. 206, 210 (2015).  In the
absence of "direct evidence of discrimination," Title VII claims
are assessed under the burden-shifting framework set forth in
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Baselice
v. AstraZeneca LP*, No. 19-cv-4931(JPO), 2021 WL 2853208, at *3
(S.D.N.Y. July 8, 2021) (citation omitted).

   Under the *McDonnell Douglas* framework, "a plaintiff must
first establish a *prima facie* case of discrimination by showing:
(1) she belonged to a protected class, (2) was qualified for the
position she held or sought, and (3) suffered an adverse employment
action (4) under circumstances giving rise to an inference of
discriminatory intent."  *Fanelli v. New York*, 200 F. Supp. 3d 363,
370 (E.D.N.Y. 2016) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137-

11

38 (2d Cir. 2003)). "This burden is minimal and does not require specific evidence of discrimination." *Brown v. Baldwin Union Free Sch. Dist.*, 603 F. Supp. 2d 509, 514 (E.D.N.Y. 2009) (citing *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006)).

The plaintiff "bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination; it is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." *Moschetti v. N.Y.C. Dep't of Educ.*, 778 F. App'x 65, 65 (2d Cir. 2019). "The employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle." *Whethers v. Nassau Health Care Corp.*, 956 F. Supp. 2d 364, 375 (E.D.N.Y. 2013), *aff'd,* 578 F. App'x 34 (2d Cir. 2014). "To rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are 'conclusory and unsupported by evidence of any weight.'" *Id.* (quoting *Smith v. Am. Express Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988)); *see also Chan v. Donahoe*, 63 F. Supp. 3d 271, 297 (E.D.N.Y. 2014) ("In order to successfully rebut an employer's purported non-discriminatory reason for the employment action, the plaintiff must establish pretext."). "Thus, when the district court considers whether the evidence can

12

support a verdict of discrimination on a motion for summary judgment, it must analyze the evidence, along with the inferences that may be reasonably drawn from it, and decide if it raises a jury question as to whether the plaintiff was the victim of discrimination." *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997) (internal quotation marks omitted).

"Claims brought under the NYSHRL are analyzed identically and the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under . . . Title VII."[2] *Hyek v. Field Support Servs., Inc.*, 461 F. App'x 59, 60 (2d Cir. 2012). Accordingly, the Court will address Plaintiff's claims of discrimination under Title VII and the NYSHRL together. The Court will separately discuss Plaintiff's discrimination claims under the NYCHRL.

With regard to the first element required to establish a *prima facie* case of discrimination, Plaintiff testified during her deposition that on September 13, 2018, she was notified by a nurse at RMA that her pregnancy was viable. (Pl. Dep. Tr. at 53:25—54:5, 54:17—56:10.) And HSVS has not proffered any admissible evidence disputing Plaintiff's pregnancy at the time of

---

[2] "Though neither the NYSHRL nor the NYCHRL explicitly names pregnancy as a type of actionable discrimination, courts have deemed pregnancy discrimination actionable under both laws." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 357 (S.D.N.Y. 2012).

her termination from employment at HSVS.  Accordingly, the first element is satisfied.

As for the second element, whether Plaintiff was qualified for the position she held, HSVS asserts that Plaintiff was not qualified because of the employee complaints.  (ECF No. 44-9, Defendant's Memorandum of Law in Support of its Motion for Summary Judgment ("Def. Br."), at 16, 20–21.)  The complaints, however, are considered separate from her qualifications.  *See Smith v. N.Y. and Presbyterian Hosp.*, 440 F. Supp. 3d 303, 329 (S.D.N.Y. 2020) (assuming that plaintiff, "who has received regular satisfactory performance reviews and pay raises," was qualified for her job, notwithstanding the frequent complaints made by others regarding plaintiff).  There is no dispute that HSVS found Plaintiff qualified when she was hired, and her qualification for the position she held is demonstrated further by the raise and the bonus she received, and HSVS's decision to task her with overseeing the remaining Clinics subsequent to the closure of the Queens and Staten Island Chemical Dependency Clinics and the Staten Island Mental Health Clinic.  (Def. 56.1 ¶¶ 21–23, 41–42.)  Consequently, the second element of the *McDonnell Douglas prima facie* analysis is also satisfied.

Next, considering the third element, the Court notes that "[a] plaintiff sustains an adverse employment action if . . . she endures a materially adverse change in the terms and

14

conditions of employment." *Joseph*, 465 F.3d at 90 (internal quotation marks omitted).   "Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (internal quotation marks and alteration omitted).   There is no dispute that Plaintiff was terminated and sustained an adverse employment action.

The Court discusses below the fourth element in the *prima facie* case of discrimination, whether Plaintiff's termination occurred under circumstances giving rise to an inference of discriminatory intent.

**B.   Application**

**1.   Plaintiff's Pregnancy Discrimination Claims**

Plaintiff cannot make a *prima facie* showing of pregnancy discrimination[3] under Title VII or the NYSHRL because she has failed to satisfy the fourth prong of the *McDonnell Douglas*

---

[3] The Amended Complaint alleges discrimination based on Plaintiff's pregnancy, perceived pregnancy, and pregnancy-related medical conditions. (Amended Compl. ¶¶ 30–35.)   As to Plaintiff's discrimination claim based on her pregnancy-related medical conditions, Plaintiff concedes that "the pregnancy-related medical condition referenced in the Amended Complaint is Plaintiff's alleged pregnancy itself and not a separate pregnancy-related medical condition"; thus, this claim is identical to Plaintiff's pregnancy discrimination claim. (Pl. Resp. ¶ 90.)

framework of showing circumstances giving rise to an inference of discriminatory intent by HSVS.  "[I]n cases where a plaintiff's membership in . . . a [protected] class is not necessarily obvious, such as pregnancy or religion, a defendant's discriminatory intent cannot be inferred, even at the prima facie stage, from circumstances unknown to the defendant.  A plaintiff must therefore produce some evidence demonstrating that the employer was aware of her protected status in order to establish a *prima facie* case." *Stainkamp v. Changes Int'l of Fort Walton Beach, Inc.*, 373 F. Supp. 2d 163, 166 (E.D.N.Y. 2005) (internal quotation marks omitted) (citing *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 82 (2d Cir. 2005); *Geraci v. Moody-Tottrup*, 82 F.3d 578, 581 (3d Cir. 1996)).  *See Ingenito v. Riri USA, Inc.*, No. 11-cv-2569(MKB), 2013 WL 752201, at *10 (E.D.N.Y. Feb. 27, 2013) ("To meet the fourth prong, Plaintiff must establish that the Defendants knew or had reason to believe she was pregnant before the decision to terminate her was made.").  Here, Plaintiff does not assert that her pregnancy was apparent around the time of her termination; thus, she is required to proffer evidence of HSVS's knowledge of her pregnancy to make a *prima facie* showing of discrimination.

Based on the record before the Court, there are no triable issues of fact related to Defendant's lack of knowledge of Plaintiff's pregnancy and pregnancy-based discriminatory intent that would preclude a grant of summary judgment based on

16

Plaintiff's failure to establish a *prima facie* case of discrimination. Plaintiff testified that she never told anyone at her place of employment of the nature of her medical procedure or of her pregnancy. (Pl. Dep. Tr. at 79:9—83:2.)[4]

Plaintiff argues that summary judgment is not warranted because there is a factual dispute as to whether Plaintiff's

---

[44] Q: . . . and what is this document?
A: This is a letter that was sent to me by the employee of RMA.
Q: As an attachment to the email?
A: Yes.
. . .
Q: So just the letter . . . was provided to [Alexandre], not the email?
A: Correct.
. . .
Q: Did you provide this letter to anyone else at [HSVS]?
A: No.
Q: Did provide this letter to anyone at Heartshare . . . ?
A: No.
Q: Did you ever inform Jude [Alexandre] either verbally or in writing that you were undergoing fertility treatments in August and September 2018?
A: No, as I stated before, I did not.
Q: Did you ever inform any other [HSVS] employee either verbally or in writing that you were undergoing [fertility] treatments in August and September 2018?
A: No.
Q: Did you ever inform any Heartshare . . . employee either verbally or in writing that you were undergoing fertility treatments either in August and/or September 2018?
A: No.
Q: Did you ever inform Jude [Alexandre] either verbally or in writing that you were pregnant?
A: I gave him this letter.
Q: Nowhere in the letter does it identify that you are pregnant; correct?
. . .
A: No, the letter does not state that.
. . .
Q: Did you ever inform any other [HSVS] employee either verbally or in writing that you were pregnant?
A: No.
Q: Did you ever inform any Heartshare . . . employee either verbally or in writing th[at] you were pregnant?
A: No.
(Pl. Dep. Tr. at 79:18—82:23.)

supervisor, Alexandre, had read the September 11 Note from Plaintiff's doctor before she was terminated.  (ECF No. 45-2, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp."), at 9–10.)  According to Plaintiff, because she gave the September 11 Note to Alexandre on September 17, 2018, and HSVS's policy requires that an employee provide a doctor's note after the third sick day, it can be reasonably inferred that Alexandre had read the September 11 Note prior to her September 26 termination.  (Pl. Opp. at 9–10; Pl. Resp. 56.1 ¶ 74.)  Defendant denies, without citing to the record, that Alexandre had received or read the September 11 Note prior to Plaintiff's termination.  (ECF No. 44-9, Defendant's Memorandum of Law in Support of its Motion for Summary Judgment ("Def. Br."), at 14–15.)  The Court, having conducted an independent review of the record, notes that Alexandre testified during his deposition that he never received the September 11 Note from Plaintiff and that he had not seen the note prior to the instant litigation. (Alexandre Dep. Tr. at 85:13–17, 86:8–87:17.)  Plaintiff testified that she provided the September 11 Note in an envelope, along with several other routine documents, to Alexandre on September 17, 2018, but did not tell Alexandre about the note and did not observe him open the envelope or read the note.  (Pl. Dep. Tr. at 72:21–78:6.)

The Court finds that whether Plaintiff had given the September 11 Note to Alexandre and whether Alexandre had read the

note prior to Plaintiff's termination do not raise disputed issues
of material fact that preclude summary judgment on Plaintiff's
pregnancy discrimination claims under Title VII and the NYSHRL.
*See Anderson*, 477 U.S. at 248 ("Only disputes over facts that might
affect the outcome of the suit under the governing law will
properly preclude the entry of summary judgment.  Factual disputes
that are irrelevant or unnecessary will not be counted.").  Even
if Plaintiff had given the September 11 Note to Alexandre and
Alexandre had read it before she was terminated, the information
contained therein would not have been sufficient to put him or
HSVS on notice that Plaintiff was pregnant.  The September 11 Note
merely stated that Plaintiff was under the care of a Dr. Jovana
Lekovich at RMA and that Plaintiff underwent "a procedure" on
September 17, 2018.  (Exhibit 8 to Toren Affirm.)  The note did
not specify the nature of Plaintiff's procedure.  (*Id.*)  Indeed,
Plaintiff concedes that the September 11 Note does not indicate
that she was pregnant.  (Pl. Resp. 56.1 ¶ 87.)  Plaintiff also
concedes that she did not provide the September 11 Note to anyone
else at HSVS or Heartshare, did not inform anyone at HSVS or
Heartshare, verbally or in writing, that she was pregnant, and did
not witness anyone at HSVS make any remarks about her pregnancy or
perceived pregnancy.  (*Id.* ¶¶ 81, 85—86, 91.)  Even though
Plaintiff was pregnant and thus in a protected group, she has not
shown that HSVS had knowledge of her pregnancy prior to her

termination.[5]   Consequently,  the  Court  finds  that  Plaintiff  has
failed  to  establish  a  *prima  facie*  case  of  pregnancy  discrimination
under  Title  VII  or  the  NYSHRL.

Furthermore,  September  17,  2018,  the  date  Plaintiff
allegedly  gave  the  September  11  Note  to  Alexandre,  postdates  the
September  14,  2018  conference  call  with  Saffayeh,  Alexandre,
Heartshare's  upper-level  executives,  and  outside  counsel,  during
which  Plaintiff's  termination  was  discussed  in  light  of  Meisel's
complaint,  which  demonstrates  that  HSVS's  decision  to  terminate
Plaintiff  was  not  based  on  her  pregnancy.   (Pl. Resp. 56.1 ¶¶ 59,
74.)   Plaintiff  does  not  contest  that  the  subject  of  the  September
14  telephone  conference  was  Plaintiff's  termination  due  to  the
history  of  employee  complaints  about  Plaintiff.

Finally,  though  "the  'temporal  proximity  between  the
time  she  disclosed  her  pregnancy  and  her  termination'  is  often  an
important  consideration,"  *Farmer v. Shake Shack Enters., LLC*,  473
F.  Supp.  3d  309,  326  (S.D.N.Y.  2020)  (citing  *Lenzi v. Systemax,
Inc.*,  944  F.3d  97,  108  (2d  Cir.  2019)),  "[i]n  cases  in  which  the
employer  claims  that  the  decision  to  terminate  was  made  prior  to
learning  of  plaintiff's  protected  status,  the  plaintiff  must  also
'adduce  some  evidence,  whether  direct  or  indirect,  indicating  a
defendant's  knowledge'  of  the  plaintiff's  membership  in  the

---

[5] Because Plaintiff has failed to demonstrate that anyone at HSVS was put on
notice of her pregnancy, the Court need not address whether HSVS had general
corporate knowledge of her pregnancy.

protected class." *Pace v. Fisher Price*, No. 03-cv-6474(ILG), 2005 WL 3360452, at *4 (E.D.N.Y. 2005) (citations omitted). *See id.* (granting summary judgment to defendant employer because plaintiff failed to present evidence that defendant knew of her pregnancy before deciding to terminate her employment); *Stainkamp*, 373 F. Supp. 2d at 167-68 (granting summary judgment to defendant employer where plaintiff was terminated two days after notifying the employer's Chief Executive Officer of her pregnancy because plaintiff did not show that those with decision-making authority regarding her discharge were aware of the pregnancy at the time the decision to terminate her was made).  In the present case, given Plaintiff's failure to adduce evidence indicating that HSVS knew or had reason to believe that she was pregnant, the temporal proximity between September 17, 2022, when she allegedly gave the September 11 Note regarding her undisclosed "procedure" to Alexandre, and September 26, 2018, when she was given notice of her termination, is not sufficient to save her pregnancy discrimination claims.

        Having found that Plaintiff has failed to establish a *prima facie* case of discrimination, the Court does not reach whether HSVS has made a sufficient showing that it had a legitimate, nondiscriminatory reason for terminating Plaintiff.[6]

_____

[6] Even if the Court were to consider whether HSVS has proffered a legitimate, nondiscriminatory reason for terminating Plaintiff, Plaintiff cannot dispute that both Saffayeh and Alexandre had received numerous employee complaints

21

Accordingly, HSVS's motion for summary judgment is granted as to Plaintiff's pregnancy discrimination claims under Title VII and the NYSHRL.

> ## 2. Plaintiff's Perceived Pregnancy Discrimination Claims

The Second Circuit has yet to address whether Title VII's protections extend to individuals who are perceived to be members of a protected class. In *Lewis v. N. Gen. Hosp.*, the court concluded, based on the text of Title VII, that "the protections of Title VII do not extend to persons who are merely 'perceived' to belong to a protected class." 502 F. Supp. 2d 390, 401 (S.D.N.Y. 2007). *But see Capek v. BNY Mellon, N.A.*, No. 15-cv-4155(LTS), 2016 WL 2993211, at *3 (S.D.N.Y. May 23, 2016) (rejecting, in a Section 1981 action, defendant's argument that plaintiff's discrimination claims "cannot proceed because she was merely 'perceived' to be a member of a protected class," reasoning, "[t]hat an employer discriminates against an employee based on a mistaken belief regarding that employee's race (or any of the characteristics protected under Title VII) does not make the practice less damaging to the employee nor does it make the discrimination itself less worthy of redress."). And the NYSHRL,

---

regarding Plaintiff, and that Saffayeh, Alexandre, Capela, Vinluan, Cowitt, and outside counsel had a conference call on September 14, 2018, during which Plaintiff's termination was discussed in light of Meisel's complaint. (ECF No. 44-5, Saffayeh Deposition Transcript, at 53:17—54:20; Alexandre Dep. Tr. 54:20—55:12; Def. 56.1 ¶ 59.)

unlike its local counterpart, which specifically prohibits "actual or perceived" discrimination, N.Y.C. Admin Code § 8-107(1)(a), does not indicate that its protections extend to a perceived member of a protected class. Notably, Plaintiff does not point to a single case stating that claims can be brought under Title VII or the NYSHRL for discrimination based on a perceived protected status.

In the instant action, the Court need not, and therefore does not, decide whether discrimination based on an individual's perceived membership in a protected class is covered by Title VII or the NYSHRL because Plaintiff has failed to adduce evidence showing that anyone at HSVS perceived her to be pregnant. In the disability discrimination context, where claims can be brought under the ADA and the NYSHRL for discrimination based on a perceived disability, a plaintiff must show that she suffered an adverse employment action because her employer regarded her to be disabled. *See Sibilla v. Follett Corp.*, No. 10-cv-1457(AKT), 2012 WL 1077655, at *6–*9 (E.D.N.Y. Mar. 30, 2012) (granting summary judgment in favor of defendant employer on plaintiffs' ADA and NYSHRL claims based on their perceived disability, holding that plaintiffs have failed to establish a *prima facie* case of discrimination because they have not demonstrated that defendant "regarded them as disabled within the meaning of the ADA and,

23

therefore, . . . have not established membership in a protected class").

Here, Plaintiff has not presented evidence, including testimony from Alexandre or anyone else at HSVS that they perceived Plaintiff to be pregnant. Furthermore, Plaintiff concedes that she did not witness anyone at HSVS make any remarks about her pregnancy or perceived pregnancy. (Pl. Resp. 56.1 ¶ 91.) And Plaintiff has not presented other facts that demonstrate that HSVS employees believed her to be pregnant. Without any showing of circumstances from which an inference can be drawn that Plaintiff was perceived to be pregnant, Plaintiff cannot establish that she was discriminated based on a perception by HSVS that she was pregnant. Even if the Court were to assume that Alexandre had received and read the September 11 Note prior to the decision to terminate Plaintiff was made, his knowledge of the information contained therein, that she had a "procedure," which neither indicated that Plaintiff was pregnant nor that she received fertility treatment, alone, is not sufficient to demonstrate that Alexandre, based on that information, regarded Plaintiff to be pregnant. Because Plaintiff has not shown that HSVS regarded her as being pregnant, the Court finds that she has failed make a *prima facie* showing of discrimination based on her perceived pregnancy.

Having found that Plaintiff has failed to establish a *prima facie* case of discrimination, the Court does not reach

whether HSVS has made a sufficient showing that it had a legitimate, nondiscriminatory reason for terminating Plaintiff. Accordingly, HSVS's motion for summary judgment is granted as to Plaintiff's discrimination claims based on her perceived pregnancy under Title VII and the NYSHRL.

## II. Plaintiff's Pregnancy and Perceived Pregnancy Discrimination Claims Fail under the NYCHRL

### A. Legal Standard

"Pregnancy discrimination is a form of gender discrimination under the NYCHRL." *Chauca v. Abraham*, 841 F.3d 86, 90 n.2 (2d Cir. 2016). *See Sanchez v. El Rancho Sports Bar Corp.*, No. 13-cv-5119(RA), 2015 WL 3999161, at *6 n.6 (S.D.N.Y. June 30, 2015) ("Although § 8-107(1) does not explicitly refer to pregnancy, the New York Court of Appeals has held that 'distinctions based solely upon a woman's pregnant condition constitute sexual discrimination.'" (quoting *Elaine W. v. Joint Diseases N. Gen. Hosp., Inc.*, 613 N.E.2d 523, 525 (N.Y. 1993))).

Thus, under the NYCHRL, it is an unlawful discriminatory practice for "an employer or an employee or agent thereof" to discharge an employee or discriminate against such person in "terms, conditions or privileges of employment" because of her pregnancy. N.Y.C. Admin. Code § 8-107(1)(a). Furthermore, the NYCHRL makes unlawful discrimination based on "actual or *perceived*" pregnancy. *Id.* (emphasis added). To sustain a

discrimination claim under the NYCHRL, a plaintiff need not establish a materially adverse employment action. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013).

Although the NYCHRL was formerly construed to be coextensive with its federal and state counterparts, the law was amended in 2005 and requires an independent analysis. *Id.* at 108–09. Courts must construe the NYCHRL's provisions "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible[.]" *Id.* at 109 (citing *Albunio v. City of New York*, 947 N.E.2d 135, 137 (N.Y. 2011)). "In other words, summary judgment is appropriate if 'the record establishes as a matter of law' that discrimination . . . 'play[ed] no role' in the defendant's actions." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) (quoting *Mihalik*, 715 F.3d at 110 n.8).

**B.  Application**

Even under the broader construction required by the NYCHRL, Plaintiff cannot make out a *prima facie* case of discrimination because she has not presented evidence from which a reasonable jury could conclude that her pregnancy played a role in her termination. As discussed above, Plaintiff has failed to adduce any evidence, direct or indirect, indicating that HSVS had knowledge of Plaintiff's protected status prior to terminating

her.    Because  no  reasonable  jury  could  conclude  that  HSVS
discriminated  against  Plaintiff  based  on  her  protected  pregnancy
status  that  was  unknown  to  HSVS,  summary  judgment  on  Plaintiff's
NYCHRL  pregnancy  discrimination  claim  is  granted.

         Likewise,  the  Court  grants  summary  judgment  in  favor  of
HSVS  on  Plaintiff's  perceived  pregnancy  discrimination  claim  under
the  NYCHRL  because,  as  discussed  *supra*,  Plaintiff  has  not  presented
any  facts  to  show  that  HSVS  perceived  her  to  be  pregnant.   *See
Jean-Louis  v.  American  Airlines*,  No.  08-cv-3898(FB),  2010  WL
3023943,  at  *6  (E.D.N.Y.  July  30,  2010)  (granting  summary  judgment
in   favor   of   defendant   supervisor   on   plaintiff's   NYCHRL
discrimination  claim  based  on  his  perceived  sexual  orientation,
reasoning  that  plaintiff  "fail[ed]  to  plead  any  facts  even  remotely
suggesting  that  [the  supervisor]  believed  him  to  be  gay  or
discriminated  or  harassed  him  on  the  basis  of  his  actual  or
perceived  sexual  orientation.").  Based  on  the  foregoing,  the  Court
grants  HSVS's  motion  for  summary  judgment  on  Plaintiff's  NYCHRL
pregnancy  and  perceived  pregnancy  discrimination  claims.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is granted in its entirety.  The Clerk of Court is respectfully requested to enter judgment for Defendant and close this case.

**SO ORDERED**

Dated:    June 10, 2022
          Brooklyn, New York

                              _____/s/_____
                              **HON. KIYO A. MATSUMOTO**
                              United States District Judge
                              Eastern District of New York

28